UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SUSANNE ASCHER,

        Plaintiff,

vs.                              Case No. 3:12-cv-20-J-37MCR

MAYO CLINIC,

        Defendant.
_____/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the parties' cross Motions for Summary Judgment (Docs. 16, 17), and their respective responses thereto (Docs. 22, 23). This case was referred to the undersigned for a Report and Recommendation regarding the appropriate resolution of the case. (Doc. 6). For the reasons stated herein, it is respectfully recommended that Plaintiff's Motion for Summary Judgment (Doc. 16) be **DENIED**, and Defendant's Motion for Summary Judgment (Doc. 17) be **GRANTED**.

## I.   INTRODUCTION

Plaintiff Susan Ascher brought her Complaint pursuant to section 502(a)(l)(B) (also cited as 29 U.S.C. §1132 (a)(1)(B)) of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. 1). Plaintiff is a former employee of Defendant Mayo

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. § 636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

Clinic ("Mayo"). Plaintiff brought suit against Mayo in its capacity of plan administrator of the Mayo Long Term Disability Plan (the "Plan") for improperly denying her claim for long term disability ("LTD") benefits.

## II.    BACKGROUND

### A.    STATEMENT OF FACTS[2]

Plaintiff worked as an employee of Mayo for 13 years. (AR 194). Her position was as an Equal Employment Opportunity/Affirmative Action ("EEO/AA") Coordinator in the Human Resources Department. (AR 50). On June 9, 2010, Plaintiff stopped working and was granted leave under the Family Medical Leave Act ("FMLA") by Mayo from June 9, 2010 to September 14, 2010. (AR 20, 22, 67, 77). On October 12, 2010, Plaintiff submitted a Claim for LTD Benefits ("Claim"). The following is a summary of the medical evidence pertinent to Plaintiff's Claim.

On April 29, 2010, Plaintiff's primary care physician Dr. Ross Osborne wrote a letter on Plaintiff's behalf stating Plaintiff was undergoing treatment for lower back pain. (AR 415). Dr. Osborne indicated that Plaintiff was "somewhat restricted in her ability to drive" and that she should not lift any more than 20 pounds. (Id.).

On June 8, 2010, Plaintiff was seen by Margaret K. Boone, PA-C with symptoms of back pain. It was noted that Plaintiff had a history of chronic low back pain and leg pain status-post lumbar fusion and status-post spinal cord stimulator implant in June

---

[2]    The administrative record is attached as Exhibit 1 to Defendant's Memorandum in Support of its Motion for Summary Judgment. (Doc. 18). The Court will cite to specific documents from the administrative record (e.g., AR __).

-2-

2009. It was also noted she had previously undergone sacroiliac injections and TFESI injections without benefit. (AR 180).

On June 21, 2010, Dr. Osborne completed a Certification of Health Care Provider for Employee's Serious Health Condition on behalf of Plaintiff. (AR 118-21). In this Certification Form, Dr. Osborne indicated Plaintiff would need to be on FMLA leave from June 9, 2010 through August 10, 2010. (AR 119-20). Dr. Osborne also indicated that Plaintiff would need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of her medical condition. (AR 120).

On July 13, 2010, Plaintiff was seen by Dr. Thomas Rizzo regarding her lower back pain and right leg pain. (AR 168-72). Dr. Rizzo's treatment notes stated that Plaintiff's lower back pain began 13 years ago after an automobile accident, and a subsequent automobile accident in 2007 exacerbated her injuries. (AR 170).

On August 5, 2010, Plaintiff was seen by Dr. Osborne complaining of pain in her sternoclavicular joint which was not improved with medication. (AR 101-03). Plaintiff also sought evaluation for urinary incontinence and was referred to urogynecology. (AR 101-03). In an August 15, 2010 letter, Dr. Osborne requested that Plaintiff's FMLA leave be extended until at least August 23, 2010. (AR 117).

On September 1, 2010, Plaintiff was seen by Dr. Steven Goldwasser, whom she was referred to by Dr. Osborne. Plaintiff's treatment by Dr. Goldwasser was related to her complaints of prolapse and incontinence. He did not offer any opinion regarding Plaintiff's ability to work. (AR 82-86).

On September 15, 2010, Plaintiff was again seen by P.A. Boone. (AR 149). At that time, it was noted that Plaintiff was continuing to use Lyrica and Lortab for pain. P.A. Boone opined Plaintiff should continue with the same prescriptions and undergo a right sacroiliac injection. (AR 150).

On October 12, 2010, Plaintiff underwent a procedure with Dr. Osborne described as "fluoroscopy guided intra-articular sacroiliac joint injection." (AR 419-20). On October 28, 2010, Plaintiff was seen by Dr. Osborne for follow up. At that time, Dr. Osborne completed an Attending Physician Statement, providing opinions as to work duties and activities Plaintiff could perform. Dr. Osborne noted Plaintiff could type, talk, and use her hands not involved with lifting. Dr. Osborne also noted Plaintiff would need to limit sitting to no more than 15 minutes at a time, she could not stand more than 15 minutes, and she could not lift more than 10 pounds. (AR 75).

Plaintiff saw Dr. Osborne for a follow up visit on February 9, 2011. Dr. Osborne's notes indicated that he refilled certain prescriptions but did not offer any additional information regarding Plaintiff's ability to work. (AR 60-61).

### B.    THE LONG TERM DISABILITY PLAN

Plaintiff's entitlement to LTD is governed by the Mayo Long Term Disability Plan, for which Mayo acts as the administrator and is responsible for final decisions regarding administration of the Plan. Mayo retains all discretionary and ultimate authority for the Plan. (Doc 1-A, pp. 29, 30, 33). An eligible employee who is participating under the Plan must meet the Plan's definition of "Total Disability" to be entitled to benefits. (Id. at pp. 8, 16). An employee is considered to have a total disability under the plan if she can

demonstrate she is "completely unable to perform the duties of [her] regular occupation" due to illness or injury.  (Id. at pp. 16, 35).

The Plan pays a percentage of a plan participant's pre-disability earnings in the event of total disability and provides for a thirteen-week elimination period.  To be eligible for benefits, the Plan participant must be disabled throughout the entire elimination period.  (Id. at p. 18).  The Plan states that "total disability" means that, for the first two years and thirteen weeks of disability, the Plan participant is completely unable to perform the duties of their regular occupation, and the Plan participant is not engaged in some other occupation (except as provided by the rehabilitative provisions of the Plan) due to illness or injury, and the Plan participant is under the regular care of a physician.  (Id. at p. 16).  After two years and thirteen weeks of disability, a participant is totally disabled if they are unable to engage in any gainful occupation for which they are fitted by education, training or experience.  (Id.).

### C. CLAIM FOR LONG TERM DISABILITY BENEFITS

On October 12, 2010, Plaintiff submitted her Claim for LTD Benefits based on peripheral neuropathy.  Plaintiff claimed she was "unable to sit upright for more than 10 minutes without back spasming [sic]," she was "unable to walk more than a few minutes," she was "unable to drive to Mayo Clinic," and she was unable "to sit at computer [sic] for more than 10 minutes at a time without having to lie down due to severe pain and spasms."  (AR 42).

-5-

Dr. Linda Miller, Mayo's Medical Director, reviewed Plaintiff's medical records and Dr. Osborne's Attending Physician Statement.[3] (AR 396). On November 11, 2010, Dr. Miller provided Bradley Bridges, Mayo's Claims Adjuster, with her opinion that Plaintiff was not totally disabled. (AR 193-94, 396). On November 18, 2010, Mr. Bridges sent an e-mail to Plaintiff stating that her claim was not approved because the medical records did not document that a physician had taken her off of work or specify any particular restrictions that would prevent her from doing her job. (AR 40). Mr. Bridges asked Plaintiff whether she knew "of any work excuses or work restrictions that were given to you, that you could provide me with?" (AR 40). Plaintiff did not provide any additional documentation in response. (AR 38).

Before a formal decision was issued, Mr. Bridges requested a copy of the job description Physical Assessment Form for the position of EEO/AA Coordinator. (AR 37, 35, 189-90). Dr. Miller then reviewed Plaintiff's medical records, the Attending Physician Statement, along with the Physical Assessment Form.[4] Based on her review, Dr. Miller again concluded Plaintiff's restrictions did not prevent her from working in her usual capacity; therefore, Plaintiff was not totally disabled. (AR 114, 188).

---

[3] As stated above, on October 28, 2010, Dr. Osborne completed an Attending Physician Statement opining Plaintiff could type, talk, and use her hands not involved with lifting. Dr. Osborne also stated Plaintiff would need to limit sitting to no more than 15 minutes at a time, she could not stand more than 15 minutes, and she could not lift more than 10 pounds. (AR 75).

[4] The job description Physical Assessment Form indicates that the EEO/AA Coordinator position required frequent sitting, occasional standing, occasional walking, occasional lifting/carrying less than 10 pounds, continuous verbal and written communication, and continuous repetitive motion - wrist, elbow, hand, shoulder. (AR 50).

On December 15, 2010, Mayo denied Plaintiff's Claim for LTD benefits finding there was no medical documentation that she met the 13 week waiting period or that she was unable to perform an occupation with duties similar to the one she worked in for Mayo.[5]  (AR 29-31, 187).  On February 4, 2011, Plaintiff's attorney sent a letter to Mayo requesting an appeal of Plaintiff's Claim denial.  (AR 17).

On February 28, 2011, Mayo responded to Plaintiff's attorney's letter and advised that any additional medical records or other information as part of the appeal should be submitted by March 4, 2011.  (AR 12-13).  Upon Plaintiff's attorney's request, Mayo provided additional time until April 8, 2011 for Plaintiff to submit additional documentation.  (AR 8, 9).  On March 11, 2011, Plaintiff's attorney sent supplemental medical records to Mayo.  However, most of the supplemental medical records submitted included records which were already in the file, but there were new records from Dr. Hellinger and Dr. Rizzo submitted.[6]  (AR 104-13).  These records provided no additional evidence or opinion as to whether Plaintiff was able to perform the duties of

---

[5]   Plaintiff's Motion for Summary Judgment appears to contend that her LTD benefits were denied solely because she failed to provide medical documentation that she met the 13 week waiting period.  See (Doc. 16, p. 10).  However, Plaintiff's denial was also based on Mayo's determination that Plaintiff was able to perform an occupation with duties similar to the one she worked in for Mayo, thus, she did not meet the definition of total disability under the Plan. (AR 29-31, 187).

[6]   Specifically, on October 18, 2010, Plaintiff was seen Dr. Rizzo, whom she had previously seen and was referred to by Dr. Osborne. Dr. Rizzo did not offer any opinion as to whether Plaintiff was able to perform the duties of her job. (AR 112-13). On October 29, 2010, Dr. Hellinger noted the results of Plaintiff's screening tests for hepatitis B, C, and HIV, which were all negative. (AR at 109-10).

her regular occupation.  (AR 109-10, 112-13).  Mayo reviewed the additional medical records and on April 22, 2011, denied Plaintiff's appeal.[7]  (AR 6-7).

On April 22, 2011, Plaintiff's attorney requested a second appeal but did not submit any additional records.  (AR 276).  On May 3, 2011, Plaintiff's appeal was again denied.  (AR 272-73).

## III.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In an ERISA benefit denial case ... in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."[8]  Curran v. Kemper Nat'l Servs., Inc., No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (per curiam) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)); accord Clark v. Hartford Life &

---

[7]     Dr. Miller reviewed the additional information but found no additional opinions regarding Plaintiff's restrictions for work other than those provided by Dr. Osborne on October 28, 2010.  (AR 334).  Dr. Miller maintained that the restrictions Plaintiff was given did not prevent her from performing her occupation.  (AR 334).

[7]     In Blankenship v. Metropolitan Life Insurance Co., 686 F. Supp. 2d 1227 (N.D. Ala. 2009), the court noted that even the terminology "Motion for Summary Judgment" in the ERISA benefit denial context is confusing because the court acts as a reviewing court.  The court credited the parties with using the term "Motion for Judgment as a Matter of Law."  Id. at 1232.  The court called this situation a "procedural dilemma" and advocated the creation of a new procedural rule for ERISA benefits denial cases.  Id.

Accident Ins. Co., No. 8:05-CV-67-T-23MAP, 2006 WL 890660, at *2 (M.D. Fla. Apr. 6, 2006).

### B. ERISA Standards of Review

In Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008), the U.S. Supreme Court clarified that the burden of showing that the defendant's denial of benefits was both wrong and arbitrary and capricious remains on the plaintiff despite any conflict of interest on the defendant's part. However, conflict of interest is a factor to be considered in the court's analysis. Id. at 108.

In Doyle v. Liberty Life Assurance Co., 542 F.3d 1352 (11th Cir. 2008), the court recognized that Glenn implicitly overruled prior Eleventh Circuit precedent in which a conflict of interest triggered a heightened arbitrary and capricious standard. The court stated: "We hold that the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." Id. at 1360.

In Capone v. Aetna Life Insurance Co., 592 F.3d 1189, 1195 (11th Cir. 2010), the court first reiterated the six-step analysis set forth in Williams v. Bellsouth Telecommunications, Inc., 373 F.3d 1132, 1137 (11th Cir. 2004). In short, the steps require the Court to address the following issues:

> 1. Was the administrator's decision wrong, i.e., does the Court disagree with the decision under a *de novo* standard of review?
>
> 2. If the Court disagrees with the administrator's decision, was the administrator vested with discretion under the ERISA Plan in reviewing claims?

      3.      If the administrator had discretion, was its decision arbitrary and capricious, *i.e.,* lacking any reasonable grounds?

      4.      If there were reasonable grounds for the decision, was the administrator acting under a conflict of interest?

      5.      Assuming no conflict of interest, the decision should be affirmed.

      6.      If there was a conflict of interest, review the decision under the heightened arbitrary and capricious standard.

Capone, 592 F.3d at 1195. In Capone, the court held that Glenn and Doyle left the Williams "methodology" intact except for the sixth step. Id. at 1196. Therefore, this Court will follow that analysis for Defendant's challenged decision.

## IV.   ANALYSIS

### A.   Defendant's Decision Was Not Wrong

In order to be entitled to benefits under the Plan, Plaintiff must demonstrate she had a "total disability". Mayo's Long Term Disability Plan defines "total disability" as "completely unable to perform the duties of [her] regular occupation" due to illness or injury. (Doc. 1-A, pp. 8, 16, 35). Thus, the relevant question is not whether Plaintiff suffered from some illness or had medical limitations, but whether there was a reasonable basis for Mayo's determination regarding whether or not Plaintiff was completely unable to perform the duties of her occupation with Mayo as a result of her illnesses or injuries. See Crume v. Metropolitan Life Ins. Co., 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006).

The undersigned finds that Plaintiff failed to meet her burden of demonstrating she was completely unable to perform the duties of her EEO/AA Coordinator position. Plaintiff has the burden under ERISA of showing that she is entitled to the benefits under the terms of the plan. See, e.g., Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998). The only evidence Plaintiff provided addressing her inability to work were the following restrictions noted by Dr. Osborne: she would need to limit sitting to no more than 15 minutes at a time, she could not stand more than 15 minutes, and she could not lift more than 10 pounds. (AR 75).

A decision is wrong if after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the administrator's decision. HCA Health Servs. of Georgia v. Employers Health Ins. Co., 240 F.3d 982, 993 n. 23 (11th Cir. 2001). Here, before a final decision on Plaintiff's Claim was made, Mayo followed up with Plaintiff and inquired about providing additional medical records to support her claim. (AR 37, 35, 40). When no additional information was provided, Dr. Miller reviewed the medical records, the Attending Physician Statement, and the job description Physical Assessment Form. After review, Dr. Miller opined that Plaintiff did not meet the criteria for LTD under the Plan. (AR 114).

Plaintiff failed to offer any medical opinion or records that established a total disability or addressed her alleged inability to perform the job duties of her EEO/AA Coordinator position. See Curran v. Abbott Labs. Extended Disability Plan, 331 F. Supp. 2d 1376 (M.D. Fla. 2004)(granting summary judgment where there was no basis in the record from which to find that plaintiff is "so disabled that he is completely

-11-

prevented from engaging in any occupation or employment for which he is qualified"); Johnson v. New York Life Ins. Co., 2001 WL 1736879 (M.D. Fla. 2001)(finding none of plaintiff's doctors opined his ailments rendered him completely unable to work and that the injuries or illnesses plaintiff suffered from did not cause plaintiff to be totally disabled under the plan). To the contrary, Dr. Osborne's Attending Physician's Statement opined that Plaintiff was able to perform multiple functions of her prior position.[9]

The only restrictions Plaintiff claims affected her ability to perform her job duties are that she could only sit for 15 minutes at a time and stand for 15 minutes at a time. Plaintiff suggests that these limitations would cause her to be limited to sitting four hours of an eight hour work day, less than what was required by the EEO/AA Coordinator position. (Doc. 16, pp. 11, 13). However, to the contrary, four hours of sitting per day would be within the range of sitting required by Plaintiff's EEO/AA Coordinator position.[10] (AR 50). There is no limitation on the number of hours Plaintiff would have been permitted to stand during the day and she could have alternated between sitting and standing throughout the day. Accordingly, Plaintiff is not rendered completely unable to perform the job functions of her regular occupation.

---

[9] Dr. Osborne opined that Plaintiff could type, talk, use her hands not involved with lifting, lift less than 10 pounds, sit for periods of time less than 15 minutes, and could stand for periods of time less than 15 minutes. (AR 75); see Jordan v. Metro. Life Ins. Co., 205 F. Supp. 2d 1302 (M.D. Fla. 2002)(holding a decision to deny benefits was not wrong where plaintiff's doctors identified minimal restrictions but did not report she was unable to perform her current occupation); Schindler v. Metro. Life Ins. Co., 141 F. Supp. 2d 1073 (M.D. Fla. 2001)(holding administrator's decision that plaintiff was not totally disabled, or unable to perform any occupation, was not wrong where the evidence showed that plaintiff could walk, bend, lift, and stoop with some limitations and was performing some sedentary activity).

[10] The Physical Assessment Form provided that the EEO/AA Coordinator position required sitting "frequently," which was further defined as "2.5 to 5.5 hours/day." (AR 50).

In light of the foregoing, the undersigned concludes that Mayo was not *de novo* wrong in determining Plaintiff did not meet the definition of total disability under the Plan.[11]  See Meyer v. Hartford and Accident Ins. Co., 320 F. Supp. 2d 1256 (M.D. Fla. 2004) (holding administrator's decision denying benefits was not wrong where independent neurology consult, advice of rehabilitation case manager, and review of entire claim provided ample medical evidence plaintiff was not totally disabled).

### B.    Defendant was Vested with Discretion in Reviewing Claims

The undersigned concludes Mayo's determination that Plaintiff was not entitled to LTD benefits under the Plan is not *de novo* wrong and, thus, it is not necessary for the Court to proceed with any further inquiry and summary judgment should be entered in favor of Mayo.  However, assuming *arguendo,* that Defendant's decision was *de novo* wrong, the Court must then determine whether Defendant was vested with discretion under the Plan in reviewing claims.  Mayo concedes that it had such discretion.  Therefore, the arbitrary and capricious standard of review is invoked.

### C.    Defendant's Denial of Short Term Disability Benefits under the Plan was not Arbitrary and Capricious

Under an arbitrary and capricious standard of review, even an erroneous decision by an administrator does not necessarily warrant a reversal.  HCA Health Servs., 240 F.3d at 994.  However, the court must still determine whether the claimant

---

[11]   Plaintiff's argument that her short term disability benefits should have some impact on Mayo's decision regarding LTD benefits is without merit.  There is no evidence in the record regarding the existence of a Mayo ERISA plan for short term disability benefits; nor does Plaintiff's Motion point to any such evidence.  Plaintiff's entitlement to short term disability benefits is not related and provides no relevance as to whether Plaintiff meets the LTD Plan's definition of total disability.

herself has advanced a reasonable basis for its determination. Id. Even if the court determines that the plan administrator's interpretation was erroneous and the claimant has advanced a reasonable interpretation, if the administrator's decision was erroneous but also reasonable, that decision still trumps the claimant's interpretation.[12] Id.

As explained above, the medical evidence in this case does not support Plaintiff's claim that she was completely unable to perform the duties of her regular occupation. The Plan's language requires that an individual must meet the definition of "Total Disability" in order to qualify for benefits. (Doc 1-A, pp. 16, 35). Namely, an individual must be "completely unable to perform the duties of [her] regular occupation" due to illness or injury. (Id.). The medical documentation presented here does not support a finding of "total disability." See Turner v. Delta Family Care Disability and Survivorship Plan, 291 F. 3d 1270,1272 (11th Cir. 2002) (holding that the plan administrator had properly considered all medical reports and other evidence and followed all procedures required by the plan when it reasonably determined the plaintiff was not disabled from performing any work); Payne v. Ryder System, Inc. Long Term Disability Plan, 173 F.R.D. 537 (M.D. Fla. 1997) (holding that the plaintiff's medical records indicated some pain and short-term disabilities, but none stated that she was permanently unable to

---

[12] "The reason the claimant's reasonable interpretation does not trump the administrator's wrong interpretation is because the plan documents explicitly grant the claims administrator discretion to interpret the plan. We cannot over emphasize the importance of the discretion afforded a claims administrator; the underlying premise of arbitrary and capricious, rather than *de novo*, review is that a court defers to the discretion afforded the claims administrator under the terms of the plan. HCA Health Servs., 240 F.3d at 994. If the determination of the plan administrator is reasonable, it will not be disturbed. Id.

return to work. Thus, the plan administrator's decision to deny the plaintiff's long-term disability claim was not arbitrary or capricious).

In light of the foregoing, the undersigned concludes that Mayo's decision was not arbitrary and capricious, or unreasonable based on the evidence before it at the time the decision was made, and should not be disturbed. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Jett v. Blue Cross Blue Shield, 890 F.2d 1137, 1139 (11th Cir. 1989).

### D.     Defendant's Conflict

Finally, Plaintiff failed to demonstrate Mayo's denial of benefits was arbitrary and capricious based on any conflict of interest. The burden remains on Plaintiff to show the decision was arbitrary; it is not Mayo's burden to prove its decision was not tainted by self-interest. See Doyle, 542 F.3d at 1360; see also Glenn, 554 U.S. 105 (2008). Courts must account for a structural conflict of interest, when one exists, as "a factor" in the analysis; but the basic analysis centers on assessing whether a reasonable basis existed for the administrator's benefits decision. Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011).

Here, the administrative record demonstrates that Mayo acted in good faith, giving Plaintiff every opportunity to provide additional medical records or information to support her claim. There is no evidence in the record of bad faith or improper motive relating to the administrator's benefit decision. Indeed, Plaintiff does not point to any such evidence. See Doyle, 542 F.3d at 1360 (finding plan administrator did not abuse its discretion in denying claim where there was no evidence in the record suggesting a

higher likelihood that the conflict affected the plan administrator's benefits decision, such as a history of biased claims administration); <u>Barchus v. Hartford Life and Accident Ins. Co.</u>, 320 F. Supp. 2d 1266, 1290 (M.D. Fla. 2004) (finding plan administrator's decision was not motivated by self interest where heavily fact laden inquiry was involved and decision was well supported by the record); <u>Meyer</u>, 20 F. Supp. 2d at 1265 (denial of LTD benefits was not arbitrary and capricious where "the financial conflict here is relatively small, as the claims decision under review affects one claimant only, and there is no evidence whatsoever of bad faith in the administrative record").  As such, the undersigned concludes that Plaintiff's denial of LTD benefits was not based on any conflict of interest.

### V.    CONCLUSION

For the reasons stated above, the undersigned finds that Mayo's determination that Plaintiff was not entitled to LTD is not wrong and, thus, summary judgment should be entered in favor of Mayo.  However, even if the Court finds that Mayo's decision was wrong, Mayo's determination that Plaintiff was not eligible for benefits was neither arbitrary nor capricious because it is consistent with the Plan and the medical evidence. Thus, summary judgment should be entered in favor of Mayo.

Accordingly, after due consideration, it is respectfully

**RECOMMENDED:**

1.    Plaintiff's Motion for Summary Judgment (Doc. 16) be **DENIED**.

2.    Defendant's Motion for Summary Judgment (Doc. 17) be **GRANTED**.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  23rd  day of January, 2013.

                                                                     _____
                                                                     MONTE C. RICHARDSON
                                                                     UNITED STATES MAGISTRATE JUDGE

Copies to:

Hon. Marcia Morales Howard
United States District Judge

Counsel of Record